# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1404

**STATE OF LOUISIANA**

**VERSUS**

**SIMCOE COLE A/K/A SIMCO W. COLE**

\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF LAFAYETTE, DOCKET NO. 136306
## HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

## SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.

Alan P. Haney
Assistant District Attorney, Fifteenth Judicial District
300 Rue Beauregard, Building C
P.O. Box 4308
Lafayette, LA  70502
(337) 291-7009
**ATTORNEY FOR APPELLANT**
    State of Louisiana

Edward J. Marquet
Louisiana Appellate Project
P.O. Box 53733
Lafayette, LA  70505-3733
(337) 237-6841
**ATTORNEY FOR DEFENDANT/APPELLEE**
   Simcoe Cole a/k/a Simco W. Cole

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

While armed with a paring knife, Defendant, Simcoe Cole, robbed Darrell Fairburn, who was a guest at a Red Roof Inn in Lafayette. Defendant's DNA was found on the knife left in Fairburn's room, and Fairburn positively identified Defendant as the perpetrator.

Defendant eventually was charged by bill of information with one count of armed robbery and found guilty. He was sentenced to serve ten years at hard labor, without benefit of probation, parole, or suspension of sentence. In a separate appeal, that conviction and sentence were affirmed. *State v. Simcoe*, 12-1039 (La.App. 3 Cir. __/__/__).

The State then charged Defendant as a habitual offender by bill of information filed March 27, 2012. Defendant entered a plea of not guilty on July 26, 2012. A habitual offender hearing was held on October 16, 2012, and Defendant was adjudicated a fourth felony offender. He was then sentenced to serve ten years at hard labor. The State noticed its intent to seek an appeal after the sentence was imposed.

## ANALYSIS

The State's one assignment of error contends the trial court erred in sentencing the Defendant to an illegally lenient sentence, well below the mandatory ninety-nine years in prison mandated by La.R.S. 15:529.1.

At the habitual offender hearing, Defendant acknowledged he was convicted of forgery on January 10, 1994, January 19, 1998, and September 5, 2000, and of armed robbery on October 19, 2011. The State then introduced documents

supporting the allegations set forth in the bill of information. Defendant subsequently called Dr. Craig Forsyth to testify as a mitigation specialist.

Dr. Forsyth testified he interviewed between twelve and fifteen people regarding Defendant. Dr. Forsyth classified the Defendant as a "naive check forger" and felt someone off the street might call Defendant a petty thief. He stated the Defendant lacked skills as a criminal and was simply an opportunist.

Dr. Forsyth classified forgery as petty theft. He was questioned regarding the armed robbery and stated, in that regard, Defendant was a one-time loser. He opined the offense involved little planning with little reward; Defendant did not hide his identity, and Defendant used a minimal weapon (a paring knife) to commit the offense. He considered the armed robbery that occurred as "low."

Dr. Forsyth testified Defendant had been employed as a cook or steward at Taylor International on several occasions over a period of twelve years and explained a cook or steward there was in charge of catering. Defendant was spoken highly of by his employer, and they were dependent upon him. Dr. Forsyth testified Defendant possessed skills and could earn a very good living. Dr. Forsyth further testified Defendant's friends and family spoke highly of him.

Dr. Forsyth believed Defendant attempted to mitigate the potentially dangerous nature of his conduct in committing the armed robbery by locking the victim in the bathroom. Dr. Forsyth theorized Defendant made sure he would be arrested because he left the victim's wallet and the weapon, which both had Defendant's fingerprints on them.

Dr. Forsyth noted Defendant admitted using drugs and alcohol and said they were what caused him to commit the offense. Dr. Forsyth further stated that Defendant's behavior was anomalistic for him.

2

Defense counsel argued Defendant was outside the norm of someone who was a habitual armed robber. He noted Defendant had three prior convictions for forgery, one involving less than $20.00 and another less than $100.00. He further argued as follows:

> Point taken is that his criminality was minor. And then on an opportunistic time, using a paring knife that was part of his tool and trade because of his cook status, he committed a crime where he took the victims and he isolated them from harm, left the -- left the weapon, left the wallet where his identity could clearly be detected, and was completely unshielded from the standpoint of identity because the victim was able to identify him quite easily.
>
> Because of that, he is outside the norm as a habitual armed robber. Because of that, a ninety-nine (99) year sentence would be constitutionally excessive as applied to this human being.

Defense counsel also argued Defendant was fifty years old, and anything more than ten years was tantamount to a life sentence. The trial court subsequently vacated the ten-year sentence previously imposed, found Defendant guilty as a habitual offender, and stated the following:

> And while the statute does provide – Revised Statute 15:529.1, Subparagraph 4(A) seems to provide that a person is sentenced to imprisonment for the fourth or subsequent felony for a determinant term not less than the longest prescribed for a First Conviction, but in no event less than twenty (20) years, and not more than his natural life.
>
> Given the facts of this case and the predicate offenses committed by this defendant, all of which the Court is familiar with, and given the testimony of Dr. Forsyth, the Court finds that the provisions of that statute, under these circumstances, seemed to be excessive. And for that reason, the Court will depart and impose the habitual offender sentence of ten (10) years, as previously imposed.

Louisiana Code of Criminal Procedure Article 881.2 provides for review of sentences by the State as follows:

> B. The state may appeal or seek review of a sentence:
>
> (1) If the sentence imposed was not in conformity with:

(a) Mandatory requirements of the statute under which the defendant was convicted, or any other applicable mandatory sentence provision; or

(b) The applicable enhancement provisions under the Habitual Offender Law, R.S. 15:529.1; and

(2) If the state objected at the time the sentence was imposed or made or filed a motion to reconsider sentence under this Article.

While the State did not object at the time the Defendant's sentence was imposed nor did it file a motion to reconsider sentence, it did give notice of its intent to appeal. In *State v. Thibodeaux*, 12-300 (La.App. 3 Cir. 10/24/12), 100 So.3d 398, this court deemed the State's giving immediate notice at sentencing of its intent to appeal as the equivalent of an objection to the trial court's sentence where the parties stipulated as to the defendant's identity and the predicate offenses.

In *State v. Jefferson*, 01-1139 (La.App. 5 Cir. 3/13/02), 815 So.2d 120, *writ granted on other grounds*, 02-1038 (La. 1/10/03), 838 So.2d 724, the State argued the trial court erred when it made a downward departure from the statutorily mandated sentence without presenting a basis for the departure, and the defendant received an illegally lenient sentence. The State asked the fifth circuit to vacate the sentence and remand the matter for resentencing.

The fifth circuit noted the State failed to file a motion to correct illegal sentence and did not object to the sentence at the time it was imposed. The State merely made a motion for appeal, and the ground for the appeal was not stated. The fifth circuit went on to state that it must determine whether the State's actions were sufficient to preserve the issue for appeal.

In finding the matter was properly before the court, the fifth circuit stated:

Recently the Supreme Court ruled that R.S. 15:301.1 has retroactive application. *State v. Williams*, 00-1725 (La.11/28/01), 800

4

So.2d 790. The *Williams* court also considered the authority of the appellate courts to amend or order amended an illegally lenient sentence when the state did not object below or complain on appeal of the leniency. Although the procedural facts of *Williams* can be distinguished from the case at bar, because in the instant matter the state does complain of the sentence on appeal, we find *Williams* enlightening and applicable to the instant matter.

. . . .

In analyzing R.S. 15:301.1 the *Williams* court found that the provisions of paragraphs A and C were self-activating, but paragraph B requires the court or the state to move to correct the sentence. In this regard, the Supreme Court noted that paragraph B addresses sentencing restrictions other than parole, probation or suspension of sentence. Paragraph B is applicable in the instant case because the sentencing problem of which the state complains is nonconformity with statutory provisions. As we interpret *Williams*, the state is exempt from the need to file either a contemporaneous objection pursuant to LSA-C.Cr.P. art. 841 or a motion to reconsider sentence pursuant to LSA-C.Cr.P. art. 881.1, because of the legislative enactment of R.S. 15:301.1B. *State v. Williams*, *supra* at p. 11, fn. 8, 800 So.2d at 798. While the Supreme Court does not specifically refer to LSA-C.Cr.P. art 881.2 in its analysis, we find that article 881.2 must be read in conjunction with article 881.1, which is specifically mentioned. Accordingly, we consider the matter properly before us, and we will review the state's appeal.

*Id.* at 123-24 (footnotes omitted).

Based on the supreme court's interpretation of La.R.S. 15:301.1(B) in *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, and the fifth circuit's opinion in *Jefferson*, 815 So.2d 120, we find the State does not have to object to the sentence imposed or file a motion to reconsider sentence to seek review of the sentence that was imposed in the case at bar. Thus, we will consider the State's assignment of error.

The Defendant was convicted of armed robbery, which is punishable by imprisonment at hard labor for not less than ten nor more than ninety-nine years. La.R.S. 14:64. He also had a 1994 conviction for forgery in Caddo Parish, a 1998 conviction for forgery in Bossier Parish, and a 2000 conviction for forgery in

Bossier Parish.    At the time of the armed robbery offense, La.R.S. 15:529.1 provided, in pertinent part:

> A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
>
> . . . .
>
> (c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> (i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life . . . .

Based upon La.R.S. 14:64 and 15:529.1, Defendant was subject to a sentence of ninety-nine years to life as a fourth offender.  However, the trial court determined such a sentence would be excessive and sentenced Defendant to serve ten years.

In *State v. Johnson*, 97-1906, pp. 6-9 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court discussed downward departures as follows:

> In *State v. Dorthey*, *supra*, [623 So.2d 1276 (La.1993),] this Court held that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment", or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime."  *Id.* at 1280-81.  Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.

6

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *See State v. Dorthey*, *supra* at 1281 (Marcus, J., concurring); *State v. Young*, *supra*[, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.

A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Young*, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).

When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to

7

break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

After the decision in *Dorthey*, 623 So.2d 1276, there was an increase in appeals from downward departures from mandatory minimum sentences. In *State v. Lindsey*, 99-3302 (La. 10/17/00), 770 So.2d 339, 343 *cert. denied*, 532 U.S. 1010, 121 S.Ct. 1739 (2001), the court held for a defendant to rebut the presumption that the mandatory minimum sentence is constitutional, he must show:

> [H]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

In *Lindsey*, the defendant was convicted of simple robbery, adjudicated a fourth felony offender, and sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Lindsey argued his sentence was excessive, noting he had prior convictions for attempted simple burglary, attempted burglary, and simple burglary. The supreme court found that Lindsey's sentence was not excessive, stating:

> [H]e is exactly the type of offender that the Habitual Offender Statute intends to punish so severely. He is sentenced to life imprisonment because he continues to commit felony after felony. The fact that his last felony was the only violent crime against a person is not an "unusual circumstance" that would support a downward departure. A person with three prior non-violent felony convictions who then proceeds to commit a felony involving violence against a person has shown that his criminal conduct is becoming worse. The goals of the Habitual Offender Statute, to deter and punish recidivism, are satisfied by imposing a life sentence against such a person.

*Id.* at 344.

8

Clearly, the supreme court in *Lindsey* emphasized that a defendant's non-violent record is a factor, but cannot be the only reason the sentencing judge uses to depart from the sentence required by the Habitual Offender Law.[1] A review of the record indicates the sentencing judge in this case was presented with numerous factors leading to his determination to find the sentence mandated by the Habitual Offender Law was excessive in this case. After a thorough review, we find the record and the jurisprudence supports the sentencing judge's conclusion that there were several factors which clearly and convincingly established Defendant was exceptional, and, due to the particular circumstances of his case, the legislature failed to fashion a meaningful sentence to match the culpability of the offender and the gravity of the offenses.

We find the instant case is similar to the facts in *State v. Combs*, 02-1920 (La.App. 4 Cir. 5/21/03), 848 So.2d 672. In *Combs*, the underlying conviction was for possession of cocaine, and he was adjudicated a third felony offender (the previous felonies were for possession of cocaine and forgery). He was subsequently sentenced to life imprisonment. The fourth circuit found the defendant's sentence was excessive, as the defendant was thirty-two years of age, had a supportive family who wanted to help him, was not in possession of a weapon when arrested, was only a petty street drug pusher, and was a non-violent offender. Based on these facts, the appellate court found the life sentence was constitutionally excessive and remanded for re-sentencing.

Similarly, in *State v. Wilson*, 37,555 (La.App. 2 Cir. 11/6/03), 859 So.2d 957, *writ denied*, 03-3232 (La. 6/4/04), 876 So.2d 73, the second circuit found the

---

[1] We note the defendant in *Lindsey* had several crimes of violence in his criminal history, and demonstrated a steadily escalating pattern of criminality. In the present case, Defendant's conviction for armed robbery was the sole crime of violence on his record and was far removed from his previous criminal activity, which consisted solely of convictions for forgery.

facts presented justified a downward departure. In *Wilson*, the defendant was convicted of first degree robbery, adjudicated a fourth felony offender, and sentenced to life imprisonment. On appeal, the second circuit reduced the defendant's conviction to simple robbery, and he was resentenced to life imprisonment without benefits. The defendant appealed, alleging the mandatory life sentence was unconstitutional as applied to him.

The second circuit noted the defendant had prior convictions that resulted in prison terms of six months, ten months, and two years. The six-month and two-year sentences were initially suspended, but eventually served, because the defendant failed to report monthly to his probation officer. The second circuit concluded the defendant's prior convictions did not reach a level of culpability and gravity warranting a life sentence and stated:

> Defendant is 42 years old and homeless. After he was arrested, he gave the police a recorded statement admitting he was depressed over the death of his son in a train accident on June 29, 1999. He admitted that he has a history of drug and alcohol abuse. He stated that he was drunk at the time he committed the robbery, and felt "hopeless."
>
> . . . .
>
> The supreme court in *Johnson*, *supra*, made clear that the fact that defendant's felonies are non-violent alone is not sufficient to override the legislatively designed sentences of the Habitual Offender Law. *Johnson*, 709 So.2d at 676. But, it did note that, "the classification of a defendant's instant or prior offenses as non-violent should not be discounted." *Id.* Three of defendant's four felonies were non-violent. Even his fourth felony, while classified as a violent offense, involved no actual violence. *Cf. State v. Hayes*, *supra*[, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301]. There is also no evidence in the record that defendant ever possessed a dangerous weapon, and Ms. Cone, the victim, testified that she never felt threatened.
>
> Furthermore, this particular life imprisonment imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life. *State v. Hayes*, 739 So.2d at 303. As

10

defendant ages, these costs will only increase due to the need for geriatric health treatments.

> The defendant in this case obviously needs lengthy incarceration. We believe that a severe sentence in this case, for example, a sentence of not less than 20 years, in conformity with La. R.S. 15:529(A)(1)(c)(i), but not more 30 years at hard labor, would meet all of the societal goals of incarceration and be constitutional in this case.
>
> For all the reasons above, and after a review of the facts and circumstances of this particular defendant and the instant crime, we find clear and convincing evidence that this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. A sentence of life imprisonment for this defendant, on this record, is "disproportionate" to the harm done and shocks "one's sense of justice." *State v. Lobato*, *supra*[, 603 So.2d 739 (La.1992)]. Thus, we are unable to conclude that this life sentence is not excessive under the constitutional standard.

*Id.* at 964-65.

In *State v. Hayes*, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, *writ denied*, 99-2136 (La. 6/16/00), 764 So.2d 955, the defendant was convicted of theft by misappropriating or taking over $500, adjudicated a third felony offender, and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. The first circuit noted the defendant admitted the theft and returned $693.00. It further noted:

> Mr. Hayes was 34 at the time of sentencing. The parole and probation officer recommended a sentence of 10 years. The manager of the business, from whom Mr. Hayes stole the money, stated that he would like Mr. Hayes to serve time, and hoped Mr. Hayes would be rehabilitated after serving time. At the time of the theft, Mr. Hayes had a second employer, who thought highly of Mr. Hayes. The employer found Mr. Hayes to be a good employee, and believed that Mr. Hayes could be rehabilitated.
>
> Mr. Hayes' criminal record contained the following convictions: two thefts under $100, one theft over $100, several counts of issuing worthless checks, check forgery, simple robbery, and the instant offense, theft of over $500. The simple robbery, was the "'crime of violence'" necessary for the life imprisonment sentence. La. R.S. 14:2(13); La. R.S. 14:2(13)(y); La. R.S. 15:529.1

11

A(1)(b)(ii). The simple robbery occurred in 1991, when Mr. Hayes pushed a minor, and stole his bicycle. None of Mr. Hayes' crimes involved a dangerous weapon.

This particular life imprisonment imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life. Mr. Hayes is a tenacious thief. He obviously needs lengthy incarceration. However, a severe sentence, for example, between twenty and forty years, would have met all of the societal goals of incarceration.

*Id.* at 303. The first circuit then vacated the defendant's sentence and remanded the matter for resentencing.

The record establishes Defendant's three prior felony offenses were non-violent (three forged checks which totaled less than $600.00) and, according to the unrebutted testimony of Dr. Forsythe, were best classified as petty theft. The record also established Defendant had a history of gainful employment and was thought highly of by his employer. His children told Dr. Forsythe their father was a good man and had been loving and supportive. The sentencing judge clearly placed great stock in Dr. Forsythe's belief that Defendant's actions in committing armed robbery, while serious and deserving of punishment, reflected a spur of the moment plan. Defendant made no attempt to hide his identity, and Dr. Forsythe emphasized Defendant clearly took steps to minimize the possibility of injury to the victims by placing them in the bathroom of the hotel room. Dr. Forsythe characterized this particular armed robbery as "low."

Furthermore, this particular sentence, effectively amounts to a life sentence for Defendant due to his age. As the courts in *Hayes* and *Wilson* noted, such a lengthy sentence imposes an undue burden on the taxpayers of the state, which will only increase as Defendant ages. While we note the armed robbery committed by Defendant in this case did involve the use of a weapon, which distinguishes it from the facts in *Wilson*, 859 So.2d 957, *Hayes*, 739 So.2d 301, and *Combs*, 848 So.2d

12

672, the facts indicated the weapon used, while unquestionably dangerous, was a weapon conveniently available to Defendant at his job, and Defendant attempted to isolate the victims from any harm by locking them in the bathroom. Therefore, we find no error on the part of the sentencing judge in concluding Defendant put forth clear and convincing evidence that would justify a downward departure.

However, we note the supreme court in *Johnson* clearly stated that even when a sentencing judge finds clear and convincing evidence to justify a downward departure from the maximum sentence under the Habitual Offender Law, "[the judge] is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances." The supreme court instructed:

> [T]he judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. Requiring a sentencing judge to re-sentence a defendant in this manner is in keeping with the judiciary's responsibility to give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender.

*Johnson*, 709 So.2d at 677.

A review of the record finds the sentencing judge failed to articulate specific reasons as to why he found the mandatory minimum sentence was not appropriate. Louisiana Revised Statutes 15:529.1(A)(4)(b) provides "the person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life." Therefore, we reverse Defendant's sentence and remand the case with the following instructions set forth in this decree.

13

**DECREE**

For the foregoing reasons, we vacate Defendant's sentence and remand this case to the trial court with instructions that it comply with the Habitual Offender Law or that it articulate specific reasons why a sentence below the mandatory minimum is constitutionally required.

**SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.**

14