STATE OF LOUISIANA

VERSUS

EMILE PIERCE

NO. 22-KA-399

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 99-5283, DIVISION "H"
HONORABLE DONALD L. FORET, JUDGE PRESIDING

October 31, 2022

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and John J. Molaison, Jr.

**SENTENCE VACATED; REMANDED**
    **SJW**
    **JJM**

**DISSENTS WITH REASONS**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STATE OF LOUISIANA
   Honorable Paul D. Connick, Jr.
   Thomas J. Butler
   Darren A. Allemand

COUNSEL FOR DEFENDANT/APPELLEE,
EMILE PIERCE
   Ashwini Velchamy
   Shanita Farris

**WINDHORST, J.**

The State of Louisiana has appealed the district court's August 16, 2022 resentencing of defendant, Emile Pierce, a third-felony offender, under State v. Dorthey, 623 So.2d 1276 (La. 1993). For the following reasons, we vacate the district court's August 16, 2022 sentence and remand for resentencing.

**FACTS and PROCEDURAL HISTORY**

This court previously set forth a summary of the proceedings in this case in State v. Pierce, 22-154 (La. App. 5 Cir. 8/1/22), — So.3d —, 2022 WL 3025590, writ denied, 22-1184 (La. 8/11/22), 343 So.3d 702, the essence of which follows.

On October 17, 2001, defendant, Emile Pierce, was convicted of armed robbery in violation of La. R.S. 14:64, which he committed on July 21, 1999. On November 5, 2001, defendant was sentenced by the trial judge to fifty years imprisonment. On May 23, 2002, after the State filed a multiple bill and the district court found defendant to be a third-felony offender, the trial judge vacated his original fifty-year sentence and resentenced him pursuant to La. R.S. 15:529.1(A)(1)(b)(ii) to mandatory life imprisonment without parole. Defendant appealed, and on April 8, 2003, this court affirmed his conviction and sentence. State v. Pierce, 02-1267 (La. App. 5 Cir. 4/8/03), 846 So.2d 55. Defendant did not seek rehearing with this court and did not apply to the Louisiana Supreme Court for writs in his direct appeal. Defendant later unsuccessfully sought post-conviction relief.

After the Louisiana Supreme Court decided State ex rel. Esteen v. State, 16-0949 (La. 1/30/18), 239 So.3d 233, rehearing denied, 16-949 (La. 3/13/18), 239 So.3d 266, thereby abrogating State v. Dick, 06-2223 (La. 1/26/07), 951 So.2d 124, defendant filed a *pro se* motion to correct illegal sentence in the district court.[1] In

---

[1] By this time, the original sentencing judge who had presided over the trial had retired ("the trial judge"), and there was a different district court judge who resentenced defendant ("the district judge").

his motion, defendant argued that he was entitled to be resentenced under the more lenient penalty provisions enacted by 2001 La. Acts. 403,[2] which reduced the sentencing range for a third felony offender under certain circumstances. Specifically, defendant argued that because the second predicate offense used by the State to adjudicate him a third-felony offender was for simple escape, a nonviolent offense, his life sentence must "be deemed rendered 'retroactively excessive and illegal' pursuant to the Act No. 403 Louisiana Legislature 2001 Regular Session mandatory ameliorative sentencing guidelines, that dictate a La. R.S. 15:529.1(A)(1)(b)(ii) multi-bill 'life sentence'" can only be prescribed to an offender whose underlying felony conviction and *both* predicate felony convictions are defined as crimes of violence under La. R.S. 14:2(B).[3] In essence, defendant argued that, applying Esteen and the ameliorative sentencing guidelines in 2001 La. Acts No. 403, under La. R.S. 15:529.1, he was no longer a "triple mandatory lifer," but rather, an "ordinary triple offender" and entitled to be resentenced accordingly.

The State responded to the motion and conceded that defendant was entitled to resentencing under the ameliorative changes to the law enacted by 2001 La. Acts No. 403. In particular, the State contended that under Esteen and La. R.S. 15:308, defendant was entitled to be resentenced to not less than 66 years imprisonment without parole and to not more than 198 years imprisonment without parole as a third-felony offender pursuant to Act. No. 403 of 2001, but was not entitled to the application of any other, more recent changes to La. R.S. 15:529.1. Defendant filed an objection to the State's response.

---

[2] In 2001, the Legislature reduced the penalties for a variety of offenses formerly carrying life sentences and third and fourth felony offender mandatory life penalties. *See* 2001 La. Acts 403 (eff. June 15, 2001). Act 403 § 6 provided that the amendment "shall only have prospective effect." Despite the general rule that ameliorative legislation is to be applied prospectively, the Legislature subsequently enacted La. R.S. 15:308 by 2006 La. Acts 45, which provided for retroactive application.

[3] La. R.S. 14:2(B) enumerates the offenses that are included as "crimes of violence." The offense of armed robbery is included as a crime of violence, and simple escape is not.

Defendant then retained counsel, who sought to have defendant resentenced under State v. Dorthey, 623 So.2d 1276 (La. 1993) and its progeny. A resentencing hearing was held in the district court on March 8, 2022. At the hearing, the State reiterated defendant's history of violence, *i.e.*, defendant's instant crime being an armed robbery committed against a female victim with a knife, and that he had two prior armed robbery convictions and a prior attempted armed robbery conviction, while armed with a firearm.

At the conclusion of the March 8, 2022 resentencing hearing, the district judge granted the motion to correct illegal sentence and vacated defendant's earlier sentence. The district judge, citing Dorthey, *supra*, chose a lenient deviation from the statutory minimum sentence provided in La. R.S. 15:529.1 and resentenced defendant to "time served," ordering defendant's immediate release. The State timely appealed the district court's resentencing of defendant.

On appeal, this court held that the sentence of "time served" did not constitute the requisite fixed term of imprisonment. State v. Pierce, *supra*. As a result, the district court's March 8, 2022 resentencing of defendant to "time served" was vacated, and this case was remanded to the district court with instructions to resentence defendant to a fixed term of imprisonment.

On remand, on August 16, 2022, the district judge resentenced defendant to imprisonment at hard labor for twenty-two (22) years with credit for time served and ordered defendant released. Thereafter, the State filed a motion for appeal and an emergency motion to maintain stay in case number 22-KM-382. This court granted that motion and stayed the district judge's August 16, 2022 order releasing defendant for forty-five days. Upon the State's filing of a motion to extend this stay, we extended the stay until November 2, 2022.

### *Defendant's Resentencing*

The district judge's August 16, 2022 resentencing of defendant was based on

the testimony and evidence presented at defendant's prior sentencing on March 8, 2022. At the March 8, 2022 hearing, defendant argued that a sixty-six-year sentence (*i.e.*, the mandatory minimum within the statutory sentencing range) was unconstitutionally excessive because due to mitigating circumstances. Defendant contended that he had documentation that he will not be a danger if released; that no one was injured during the incident; that he had shown tremendous rehabilitation at Angola; and the United States Supreme Court indicated that convictions by non-unanimous juries were unconstitutional under Ramos v. Louisiana, 590 U.S. —, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020).

Defendant testified at his March 8, 2022 resentencing hearing to the following. He was forty-nine years old, born in New Orleans, and his parents divorced when he was young. Before the age of ten, he lived with three aunts and an uncle due to his erratic and unstable family situation. He never attended the same school for two consecutive years, and when he got to the sixth grade, they promoted him to high school because he was too old to be in middle school. He eventually dropped out of school.

Defendant testified about his parents and the effect their lives had on him. His mother was a "street life" type of woman who used drugs, including cocaine and pills, and was put in jail at least twice during his childhood for committing burglaries. Defendant claimed that when he was a child, his mother's criminal background exposed him to a lot of characters who he described as "street guys" and "dope-fiend-type dudes." His father was "messed up" from his time in Vietnam where he saw the "worst of the worst" and was an alcoholic, which contributed to his unstable childhood. He lived in a foster home when he was fourteen years old for six months while his father was in jail.

Defendant testified regarding his involvement with drugs and crime at a young age. He started using cocaine when he was fourteen years old and that at fifteen

years old, he was using drugs regularly. He indicated that he was stealing and shooting cocaine all day as a teenager. He was seventeen years old when he pled guilty to his first armed robbery in 1990 and received a ten-year sentence. He began serving that sentence at Winnfield but was transferred to Angola after he escaped from Winnfield. He did not use drugs in prison and at the time of his release, he did not think he had drug issues. But a couple of months after his release, he started using drugs again because his wife was doing so also.

Approximately five months after release from his first prison sentence and while on parole, he committed another armed robbery on July 21, 1999. At the time of this armed robbery, he had been awake for two days at the time and was under the influence of cocaine. Defendant did not plead guilty to the 1999 armed robbery charge because he believed that he only committed a simple robbery or purse snatching. He maintained that he was not the same man he was in 1999, and that the Lord came into his life and changed him.

Defendant also testified regarding his time in prison, including that he finished his GED and numerous rehabilitation programs and learned to make jewelry. He completed anger management programs, a drug abuse program, money management, job placement assistance, problem solving, decision making, victim awareness and restitution, and a re-entry program.

During his testimony, defendant also discussed his TIGER score, which courts use as a risk assessment gauge regarding the threat level of an offender trying to re-enter society, and his plan if released. Defendant introduced into evidence his offender annual assessment by the Department of Public Safety and Corrections Services to show that his TIGER score was low. Defendant's re-entry plan includes working a construction job for his nephew and eventually starting his own business. In addition, his sister has agreed to let him live with her if he is released.

Defendant acknowledged that prior to the 1999 armed robbery, he committed two counts of armed robbery and one count of attempted armed robbery in 1989. On Christmas Eve in 1989, he robbed a woman and her husband of their vehicle while armed with a gun. That same year, he also attempted to commit armed robbery of a woman and a man at their business while he was armed with a gun. On New Year's Eve in 1989, he robbed another woman of her vehicle while armed with a gun. He pled guilty to those crimes in April of 1990. He also pled guilty to simple escape while incarcerated.

Christina Teekel, defendant's sister, testified at the resentencing hearing and verified that their childhood was unstable, that their mother was a convicted felon and did a lot drugs, and that they were exposed to a great deal of violence and criminals when they were children. She stated that she went to thirty-seven schools before she got to eighth grade. She also confirmed that if defendant was released, he could live with her at her house, where she had lived for thirty-four years and that no one else lived there presently. Ms. Teekel also testified that she works with her son who owns a construction company, and that defendant would have a job there if he was released.

After resentencing defendant, the district judge issued detailed written reasons for judgment explaining his reasons for a lenient deviation from the statutory minimum sentence of La. R.S. 15:529.1. The court indicated it considered the Louisiana Supreme Court's pronunciations that "a court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality," and that a defendant must clearly and convincingly show that "he is so exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored

to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, 709 So.2d 672, 676 (La. 1998).

The district judge found that, based on testimony of the witnesses and the exhibits presented, there was clear and convincing evidence defendant "was so exceptional that the legislature failed to assign a sentence meaningfully tailored to his culpability and circumstances." The district judge cited the following facts as "unusual circumstances" in support of the lenient departure from the statutory minimum: (1) defendant's highest grade of schooling was the sixth grade and defendant's sister testified that she attended thirty-seven schools before she reached eighth grade; (2) defendant developed a drug addiction by the age of fourteen and was shuffled around foster and family members' homes due to his parents' own substance abuse and criminal convictions; (3) when defendant committed the 1999 armed robbery, he was sleep deprived and abusing narcotics; (4) defendant took responsibility for his crime and the only defense he made to the crime is that he was charged with the wrong one; (5) defendant was convicted by a non-unanimous jury that deliberated for several hours; (6) defendant's prior convictions, which formed the basis for the habitual offender bill, were committed as either a juvenile or a young adult; (7) defendant has only spent five months of his adult life out of prison; (8) defendant zealously represented himself at trial and during the last twenty years of his litigation; (9) defendant provided the court with certificates of completion for (a) anger management; (b) behavioral management; (c) 100 hours of pre-release classes, which include personal development, job placement assistant, decision making, employment skills, money management, victim awareness, counseling, and job placement assistance; and (d) his successful completion of the GED program; (10) defendant has learned a trade and has become an accomplished jeweler while imprisoned at Angola; (11) as of October 25, 2021, defendant has a low Tiger Risk Score; (12) defendant has a stable and sufficient place to live with family when

released; and (13) defendant has employment upon his release with his nephew's construction business until he is able to find employment as a jeweler.

The district judge also found that defendant's case likely imposed what he called a "trial tax," which he explained meant that the trial judge had imposed a sentence as a punishment for going to trial instead of accepting a plea bargain. Defendant had been offered a plea deal by the State that may have resulted in a sentence of twenty-five years, which the defendant declined. After trial, defendant was sentenced by the trial judge to fifty years.

**LAW and ANALYSIS**

The State appealed the district judge's judgment resentencing and release of the defendant. In response to defendant's motion to correct illegal sentence filed in the district court, the State conceded that under Esteen and La. R.S. 15:308, defendant was entitled to be resentenced. The State, however, informed the district judge that the sentencing range was not less than sixty-six years imprisonment without parole and not more than one hundred ninety-eight years imprisonment without parole as a third felony offender. In the instant appeal, the State asserts the district judge erred in sentencing defendant, a third felony offender and repeat armed robber, to "22 years imprisonment with credit for time served" under Dorthey (the equivalent of a "time already served" sentence) despite the mandatory minimum sentence for a third felony offender being 66 years imprisonment.

In support of its position, the State points out that defendant is a repeat armed robber who has targeted women in his criminal offenses and who until recently was serving a life sentence as a third felony offender. The State asserts that while defendant was entitled to be resentenced under Esteen, the district judge erroneously invoked Dorthey and its progeny and not only departed downwardly from the sixty-six-year mandatory minimum, but also took the unprecedented step of resentencing defendant to twenty-two years with credit for time served and ordering his release.

The State argues that given the extraordinarily high standards of <u>Dorthey</u>, defendant's violent criminal history, the facial inadequacy of the district judge's reasons, and the record of the <u>Dorthey</u> hearing, the district judge erred in departing downwardly from the mandatory minimum sentence set forth by the legislature.

Defendant argues that the district judge acted within its discretion in finding the mandatory minimum sentence of sixty-six years would be unconstitutionally excessive because he established by clear and convincing evidence that his situation had exceptional circumstances, and that a sixty-six year sentence would not be meaningfully tailored to the circumstances of his case.

Both the legislature and the judiciary have important roles in sentencing individuals for their crimes. The Louisiana Constitution gives the legislature the sole authority to define conduct as criminal and provide penalties for such conduct. La. Const. art. 3, § 1 <u>State v. Dorthey</u>, 623 So.2d at 1280; <u>State v. Taylor</u>, 479 So.2d 339, 341 (La. 1985). Acting pursuant to this authority, the legislature passed the Habitual Offender Law. Considering that Louisiana courts have found the Habitual Offender Law in its entirety constitutional, courts must presume that the minimum sentences it imposes upon habitual offenders are also constitutional. <u>Dorthey</u>, 623 So.2d at 1281 (Marcus, J., concurring); <u>State v. Young</u>, 94-1636 (La. App. 4th Cir. 10/26/95), 663 So.2d 525.

In view of the above, the legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. <u>State v. Johnson</u>, 97-1906 (La. 3/4/98), 709 So.2d 672, 676. Despite this great deference, the Louisiana Supreme Court has found that a mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. <u>Dorthey</u>, 623 So.2d at 1280-81. In <u>State v. Johnson</u>, the Louisiana Supreme Court outlined the criteria a defendant must satisfy to show that a mandatory minimum sentence under the Habitual Offender Law is constitutionally excessive. It held that

to rebut the presumption that a mandatory minimum sentence is constitutional, defendant must clearly and convincingly show that the defendant is "exceptional, which ... means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." Johnson, 709 So.2d at 676. A sentencing court should exercise its authority to declare excessive a mandatory minimum sentence only under rare circumstances. State v. Lindsey, 99-3256 (La. 10/17/00), 770 So.2d 339, 345, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001).

When evaluating whether defendant has rebutted the presumption that the mandatory minimum sentence is constitutional, it is important to consider the Habitual Offender Law's purpose, particularly to deter and punish a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. Johnson, 709 So.2d 676-77. Taking into account the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution. Id. Applying these principles, we evaluate whether defendant clearly and convincingly established that the sixty-six year minimum sentence required by the Habitual Offender Law was excessive under the facts and circumstances of this case. In addition, while recognizing that the minimum is presumed constitutional, we examine the reasons given by the district judge for departing from the mandatory minimum sentence and finding defendant an exceptional and rare case.

First, the district judge relied on a number of circumstances from defendant's childhood in finding his situation exceptional, including the lack of education, family instability, his parents' substance abuse, his parents' criminal activity, and

defendant's own drug addiction by the age of fourteen. While these are very unfortunate circumstances, we cannot say these are the types of circumstances that make defendant an "exceptional case" warranting a lenient departure from the legislature's statutorily-created sentencing range. See, State v. Boyer, 10-693 (La. 3 Cir. 3/16/11), 56 So.3d 1119. This court has previously concluded that evidence of substance abuse issues, a tumultuous and tragic childhood, criminal parents, and age are not sufficient to rebut the presumption of constitutionality of a minimum mandatory sentence. State v. Guillard, 04-899 (La. App. 5 Cir. 4/26/05), 902 So.2d 1061, 1079.

The district judge also relied on the fact that defendant was convicted by a non-unanimous jury that deliberated for several hours. The United States Supreme Court and the Louisiana Supreme Court have held that the jury-unanimity rule in Ramos, *supra*, does not apply retroactively. Edwards v. Vannoy, 593 U.S. —, 141 S.Ct. 1547, 1554, 209 L.Ed.2d 651 (2021); State v. Reddick, 21-1893 (La. 10/21/22), — So.3d —. This pertains to an entirely different issue and is not a relevant factor to consider in determining whether defendant's case warranted a downward departure from the sentencing range. Defendant's conviction and sentence became final long before Ramos was decided and does not apply. The fact that defendant's conviction would not be valid under the Ramos holding today is not pertinent to whether defendant's sentence makes a measurable contribution to the acceptable goals of punishment, amounts to nothing more than the purposeful imposition of pain and suffering, or is grossly disproportionate to the severity of the crime. Whether a sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. Dorthey, *supra*. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless infliction of pain and suffering. Id.

Defendant's abuse of narcotics and sleep deprivation was also a factor in the district judge's determination that defendant presented exceptional circumstances. We conclude that defendant's choice to abuse narcotics does not support the district judge's finding that defendant is an exceptional case warranting a lenient departure from the sentencing range mandated by the legislature. Nor is defendant's state of voluntary intoxication at the time of the crime a proper defense to armed robbery. State v. Taylor, 01-452 (La. App. 5 Cir. 11/14/01), 802 So.2d 779, 783; State v. Sheppard, 618 So.2d 1204, 1209 (La. App. 5 Cir. 5/12/93), writ granted, cause remanded, 624 So.2d 1209 (La. 1993).

The district judge also stated that defendant took responsibility for his crime and that the only defense he made was that he was charged with the wrong one. This does not suffice as taking full responsibility for his crime because he continues to assert that he did not commit the crime of armed robbery with which he was convicted. The victim testified at trial that defendant had a knife and thrust it toward her when demanding her purse. Two other witnesses testified that defendant had something in his hand, held something up to the victim, and threatened her. Furthermore, if defendant was sleep deprived and abusing narcotics at the time of the crime as he claims, the testimony of the other witnesses is far more reliable.

Other reasons for the district judge's finding that defendant's case is exceptional included that defendant's prior convictions were for crimes committed as a juvenile or young adult and that he has only spent five months of his adult life out of prison. These facts do not make defendant's case exceptional. Age is an insufficient justification for a downward departure from a mandatory minimum sentence. State v. Hernandez, 02-892 (La. App. 5 Cir. 1/28/03), 839 So.2d 281, 284; State v. Jefferson, 01-1139 (La. App. 5 Cir. 3/13/02), 815 So.2d 120, 125.

The district judge further relied on defendant's representation of himself, his rehabilitation during his time in prison, the completion of his GED, the learning of

a trade, his low TIGER score, and that he has a place to live and employment upon his release. These factors, which occur after sentencing and while serving the sentence, are not considered in sentencing a defendant. Such evidence related to rehabilitation during imprisonment are taken into consideration by the parole board in determining whether a prisoner is deserving of parole. See La. R.S. 15:574.4. Indeed, as the State has pointed out, there is a specific statute providing for parole consideration in cases similar to defendant's situation here. Pursuant to Act 122 of 2021 and Act 750 of 2022, Subsection A(2) of La. R.S. 15:574.4 now provides that:

> Notwithstanding the provisions of Paragraph (1) of this Subsection or any other law to the contrary, unless eligible for parole at an earlier date, a person committed to the Department of Public Safety and Corrections **for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five.** This provision shall not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years. The provisions of this Paragraph shall not apply to any person who has been convicted of an offense that is both a crime of violence as defined in R.S. 14:2(B) and a sex offense as defined in R.S. 15:541 when the offense was committed on or after January 1, 1997. **The provisions of this Paragraph shall not apply to any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) or a sex offense as defined in R.S. 15:541 when the offense was committed on or after August 1, 2014.** La. **R.S.** 15:574.4(A)(2) (emphasis added) (as amended by Act 122 of 2021, effective August 1, 2021, and Act 750 of 2022, effective August 1, 2022).

Under this statute, it appears defendant may be parole eligible once he is legally resentenced in that he falls within Subsection A(2) because he has served at least twenty years of his imprisonment and has reached the age of forty-five. He therefore may have the opportunity to present to the parole board that he is rehabilitated, is not a threat for future criminal activity, has a plan for housing and employment upon release, and deserves a chance at parole release. See La. R.S. 15:574.4.

Considering the totality of the circumstances, we agree with the state that the district judge erred in imposing a sentence less than the minimum mandated by the

Habitual Offender Law.  We do not find that this case falls within a class of offenders sufficiently narrow to qualify as exceptional, or the rare situation which permits a lenient departure from the statutorily-mandated sentencing range.  It is not the sentencing judge's role to question the legislature's wisdom in setting mandatory minimum punishments for criminal offenses.  Hernandez, 839 So.2d at 284.  The sentencing court is only permitted to determine whether the particular defendant has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution.

We do not find that the mandatory minimum sentence in this case violates the constitution.  Defendant's criminal history involves the use of weapons and threats of violence on innocent individuals.  A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.  State v. Lawson, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.  Prior criminal activity is one of the factors to be considered by the district judge in sentencing a defendant.  State v. Washington, 414 So.2d 313, 315 (La.1982); Lawson, 885 So.2d at 623.  The circumstances of this defendant, an unstable and precarious childhood, parents with criminal convictions, substance abuse, his age when he committed the violent crimes, and his rehabilitative potential could potentially describe most habitual offenders who endure difficult young lives but are able to rehabilitate while in the prison system.

Furthermore, a review of Louisiana cases indicates that a sixty-six year sentence in defendant's case is not unreasonable.  In State v. Evans, 09-477 (La. App. 5 Cir. 12/29/09), 30 So.3d 958, writ denied, 10-363 (La. 3/25/11), 61 So.3d 653, this court upheld a forty-five year enhanced sentence where defendant was found to be a third-felony habitual offender upon his possession with intent to distribute cocaine conviction.  Defendant had prior convictions for violent and potentially lethal armed robberies, and for possession of cocaine.

In <u>State v. Arceneaux</u>, 18-642 (La. App. 5 Cir. 4/24/19), 271 So.3d 362, this court held that defendant's fifty-five year enhanced sentence as a third-felony offender, which was imposed after resentencing pursuant to <u>Esteen</u>, *supra*, was unconstitutionally excessive. In that case, however, defendant had an underlying conviction of distribution of cocaine with predicate convictions of theft over $500, now a misdemeanor rather than a felony, and simple robbery. This court considered that defendant sold $20 worth of crack cocaine to an undercover police officer, and the amount indicated that the defendant was a low level street drug pusher not a major drug dealer. By comparison, the violent predicate felonies in the case before us are far more grave.

In <u>State v. Mathis</u>, 18-678 (La. App. 5 Cir. 4/3/19), 268 So.3d 1160, <u>writ denied</u>, 19-731 (La. 11/5/19), 281 So.3d 677, pursuant to <u>Esteen</u>, defendant was found entitled to resentencing under the more lenient penalty provisions that were enacted by the legislature in 2001 La. Acts 403. This court held that defendant's ninety-nine-year sentence as a fourth-felony offender, two of which were armed robbery convictions, was not unconstitutionally excessive. Defendant attached certificates to his motion to show that he had completed numerous programs while incarcerated and testified that he was a changed man. This court found in <u>Mathis</u>, *supra*, this insufficient to show by clear and convincing evidence that a lenient departure from the mandatory minimum ninety-nine year sentence was justified.

In <u>State v. Johnson</u>, 19-63 (La. App. 5 Cir. 9/4/19), 279 So.3d 526, defendant was also found entitled to resentencing under the more lenient penalty provisions that were enacted by the legislature in 2001 La. Acts 403. As in this case, the State agreed that defendant was entitled to resentencing, and that the sentence should be not less than 66 years of imprisonment and not more than 198 years of imprisonment. Defendant was resentenced as a third-felony offender (two of which were armed

robbery convictions) to sixty-six years imprisonment without the benefit of parole, probation, or suspension of sentence. This court affirmed that sentence.

Courts have also upheld a 99-year sentence and an enhanced life sentence for armed robbery with a knife. *See* State v. Bruce, 10-121 (La. App. 5 Cir. 11/9/10), 54 So.3d 87, writ denied, 10-2756 (La. 4/29/11), 62 So.3d 109, where the defendant, who entered a store and robbed the night clerk armed with a knife, was convicted of armed robbery and sentenced to ninety-nine years at hard labor; he was later adjudicated a third-felony offender and received a sentence of life imprisonment at hard labor; State v. Carter, 570 So.2d 234, 235 (La. App. 5 Cir. 1990), where the defendant, who robbed a pizza delivery man while armed with a knife, was convicted of armed robbery and sentenced to 99 years imprisonment at hard labor; this was the defendant's third-felony conviction.

In considering the specific aspects relative to this defendant's case, the facts set forth in this court's previous opinion show that defendant robbed a female while armed with a knife. State v. Pierce, 02-1267 (La. App. Cir. 4/8/03), 846 So.2d 55. Although defendant contends he did not have a knife, the victim testified that he did, and other witness testimony corroborated the victim's testimony. This court found sufficient evidence to support the armed robbery conviction. Id.

In addition, as to defendant's background, the record reflects that defendant had a history of violence, including convictions for two counts of armed robbery, one count of attempted armed robbery, and simple escape. Defendant committed the prior armed robberies and the attempted armed robbery with a gun, and the instant crime occurred approximately five or six months after he was released.

Further, at defendant's original habitual offender sentencing, the trial judge sentenced defendant to life imprisonment at hard labor. A trial judge's determination based on conclusions of credibility and weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no

evidence to support the ruling. State v. Higgins, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1233. The trial judge is best situated to determine a fair and appropriate sentence for criminal conduct, which determination should be upheld unless the record shows that broad sentencing discretion is abused. State v. Aguliar-Benitez, 21-174 (La. 10/10/21), 332 So.3d 618, 620. In this case, the trial judge who viewed all the evidence at defendant's trial was best situated to determine an appropriate sentence for defendant. Although based on amendments, a life sentence is no longer appropriate, we find that a reduction from life imprisonment to twenty-two years fails to take into consideration the sentencing discretion of the trial judge who heard and had firsthand observation of the trial evidence.

We therefore find that defendant has not rebutted the presumption that the mandatory minimum sentence is constitutional or shown that the mandatory minimum sentence shocks the sense of justice. He also has not shown clearly and convincingly that he is exceptional, or that his case involves rare circumstances. Accordingly, we find the district judge erred by disregarding the mandatory minimum sentence required by the Habitual Offender Law when resentencing defendant, and we therefore vacate the sentence and remand for resentencing consistent with the principles enunciated in this opinion and Johnson, *supra*.

**DECREE**

For the reasons stated above, we vacate the district judge's August 16, 2022 resentencing of defendant to twenty-two years at hard labor with credit for time served and remand this matter to the district court for resentencing in accordance with the principles enunciated in this opinion and Johnson, *supra*.

<strong><u>SENTENCE VACATED; REMANDED</u></strong>

STATE OF LOUISIANA                          NO. 22-KA-399

VERSUS                                      FIFTH CIRCUIT

EMILE PIERCE                                COURT OF APPEAL

                                            STATE OF LOUISIANA


**JOHNSON, J., DISSENTS WITH REASONS**

I, respectfully, dissent from the majority opinion. I find that the district court has resentenced Defendant, Emile Pierce, in accordance with the principles enumerated in *State v. Johnson*, 97-906 (La. 3/4/98), 709 So.2d 672, 676. *See State v. Pierce*, 22-154 (La. App. 5 Cir. 8/1/22), *writ denied,* 22-1184 (La. 8/11/22), 343 So.3d 702 (Wicker, J., concurring). The State acknowledged that Mr. Pierce's right "to argue [. . .] that the sentence imposed is excessive or seek a downward departure below the statutorily mandated sentence" pursuant to *Dorthey*, 623 So.2d at 1280, and to seek the ameliorative benefits provided by La. R.S. 15:308, pursuant to *Esteen,* 239 So.3d at 238. *See State v. Jarvis*, 20-877 (La. 1/12/21), 308 So.3d 290, 291.

Upon careful review of the record, I find that Mr. Pierce has proven by clear and convincing evidence that he is exceptional. The district court did not err in finding that the statutory mandatory minimum sentence of sixty-six years for a third-time felon is unconstitutionally excessive in this case. He is entitled to a downward departure in sentence under *Dorthey* pursuant to *Jarvis*, *supra*. Further, the district court did not abuse its broad discretion in finding that a sentence of twenty-two years imprisonment is the longest sentence not constitutionally excessive in Mr. Pierce's case. Under the totality of the circumstances, I find that the district court did not err when it found that a sentence that fell within the range

22-KA-399                    1

of twenty-two to sixty-six years was not meaningfully tailored to Mr. Pierce's culpability, the gravity of his offense, or the circumstances of his case.

[T]he Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. *State v. Morin*, 16-64 (La. App. 5 Cir. 10/26/16), 203 So.3d 1109, 1114 (citing *State v. Johnson*, 709 So.2d at 676). However, it is also well-established that the review of sentencing, particularly the review of sentences imposed in criminal cases for constitutional excessiveness, is a function of the judiciary. *Dorthey*, *supra* at 1280. A sentence that is within statutory limits, such as a mandatory minimum sentence provided by the Habitual Offender Law, "'may violate a defendant's constitutional right against excessive punishment.'" *Id.*; *State v. Poupart*, 88 So.3d at 1144–45. "[T]he judiciary has the authority, in the rare case, to declare a sentence within these statutory limits excessive under the facts of a particular case." *Johnson*, 709 So.2d at 676.

To be found exceptional, Mr. Pierce had to clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances, he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. *See Johnson*, *supra.* In the reasons for judgment issued on March 14, 2022 in support of the March 8, 2022 district court ruling sentencing Mr. Pierce to time served, the court made the following findings:

> This Court found there was clear and convincing evidence through the testimony of the witnesses and the Exhibits presented that Emile Pierce is so exceptional that the legislature failed to assign a sentence meaningfully tailored to his culpability and circumstances.
> Specifically, the Court found the following facts amount to "unusual circumstances" required by *Johnson* and *Young* to prove Mr. Pierce's exceptionalness:
> (1) The highest grade of schooling Mr. Pierce completed was the sixth (6th) grade. His sister astonishingly testified under oath that she attend [sic] thirty-seven (37) schools before she reached eighth (8th) grade.

(2) Mr. Pierce developed a drug addiction by the age of fourteen (14) and was shuffled around foster and family members' homes due to his parents' own substance abuse and criminal convictions.

(3) When Mr. Pierce committed the crime, he was sleep deprived and abusing narcotics.

(4) Mr. Pierce took responsibility for his crime. In fact, Mr. Pierce admitted to committing a robbery, and in his own words, "made a statement on himself" to police officers after his arrest. The only defense Mr. Pierce has made to his crime is that he was charged with the wrong one.

(5) Mr. Pierce was convicted by a non-unanimous jury that deliberated for several hours.

(6) Mr. Pierce's prior convictions, which formed the basis for the multiple offender bill, were committed as either a juvenile or a young adult.

(7) Mr. Pierce has only spent five (5) months of his adult life out of prison.

(8) Mr. Pierce zealously represented himself at Trial and during the last twenty (20) years of his litigation.

(9) Mr. Pierce provided the Court with certificates of completion for (1) anger management; (2) behavioral management; (3) 100 hours of pre-release classes, which include personal development, job placement assistant, decision making, employment skills, money management, victim awareness, counseling, and job placement assistance; and (4) his successful completion of the GED program.

(10) Mr. Pierce has learned a trade and has become an accomplished jeweler while imprisoned at Angola.

(11) As of October 25, 2021, Mr. Pierce has a low Tiger Risk Score.

(12) When released, Mr. Pierce will be living with his sister, Christina Teekel, in her home of thirty-three (33) years in Walker, Louisiana. His sister lives alone in her home and has more than sufficient space to accommodate her brother for as long as he chooses.

(13) Upon his release, Mr. Pierce will be working for his nephew's construction business until he is able to find employment as a jeweler.

This Court found that in consideration of the totality of the Above-mentioned facts, a sentence within the statutory range of La. R.S. 15:529.1 would be unconstitutionally excessive to the "unusual circumstances" of Emile Pierce's case and make no measureable contribution to acceptable goals of punishment.

In its consideration of what sentence to impose, this Court considered the Fifth Circuit's ruling in *State v. Stevenson*, which held that a defendant's record of non-violent or violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. *Stevenson*, 839 So. 2d 340, 344 (La. App. 5 Cir. 2003); citing *Johnson*, 709

So. 2d at 676. Further, this Court considered the Fifth Circuit's direction that a trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about a defendant. *Stevenson*, 839 So. 2d at 344 citing *State v. Bell*, 709 So. 2d 921, 927 (La. App. 5 Cir. 1998). Lastly, this Court looked back to the Louisiana Supreme Court's decision in *State v. Johnson*, which clarified *State v. Dorthey* in ruling that a Judge must sentence a defendant to the longest sentence which is not constitutionally excessive. *Johnson*, 709 So. 2d at 677.

This Court has stated on the Record that it has no interest in the outcome of this case, and it is simply trying to do the right thing. In instituting its sentence, this Court did not take lightly the fact that Mr. Pierce has been convicted of a violent crime, regardless of what Mr. Pierce has argued. Further, this Court mentioned on the Record that no one can definitely determine Mr. Pierce's future actions. However, Emile Pierce made ten (10) court appearances during this Court's fourteen (14) month tenure. Despite having a public defender appointed to his case, Mr. Pierce represented himself during the hearings, filed his own motions, and demonstrated a thorough understanding of Louisiana Law. This Court has gotten to know Mr. Pierce, not only as a well prepared and extremely knowledgeable *pro se* litigant, but also as a person. This Court found Mr. Pierce and his family members extremely credible and honest in their representations and testimony. Considering all Mr. Pierce has accomplished while incarcerated and his current re-entry opportunities, this Court found that keeping him incarcerated would amount to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.

Lastly, this Court found that Mr. Pierce's case likely involved a "Trial Tax" – terminology used to describe a Court's punishment of a Mr. Pierce for invoking their right to trial and not accepting a plea bargain. Mr. Pierce's proposed plea bargain by the State was twenty- five (25) years, significantly less than his original fifty (50) year sentence. Mr. Pierce chose not to accept the proposed plea bargain because it was over three (3) times the maximum sentence of simple robbery – the crime Mr. Pierce believed he actually committed. Coupled with the fact that Mr. Pierce represented himself at trial, this Court found the high probability of a "Trial Tax" to be a significant factor in determining what would be the longest sentence not constitutionally excessive in this case.

Therefore, in consideration of Louisiana jurisprudence and the totality of Mr. Pierce's "unusual circumstances", this Court ruled that the longest sentence not constitutionally excessive in this case is the twenty-two years Emile Pierce has already served.

After a three-hour hearing, in addition to having observed and interacted with Mr. Pierce at a total of ten hearings over a fourteen-month hearing, the district court judge found that Mr. Pierce demonstrated by clear and convincing evidence that he is exceptional. Specifically, he found that the longest sentence he could impose that was not prohibited by La. Const. art. 1, § 20 as excessive was twenty-two years.

With regard to his culpability, the court made the following findings: 1) Mr. Pierce was a substance abuse addict since adolescence; 2) he had only spent five months of his adult life outside of confinement; and 3) he thought the crime he had committed was simple robbery. The majority correctly notes that his impaired state at the time the crime provides grounds for discrediting his testimony. However, from the time the police initially questioned him, he never denied he committed a crime. I doubt that, in insisting he committed a lesser crime and contradicting the victim and other witnesses, he found favor with the jury or the judge who sentenced him in 2001 and 2002. As the majority noted, voluntary intoxication is not a defense, but the trial court did not commit clear error when it surmised it lessened his blameworthiness.

Further, the armed robberies Mr. Pierce committed, though crimes of violence, do not place him among the worst offenders. Though I am mindful of his victims' suffering, he did not physically harm anyone in the commission of his crimes. The district court did not commit clear error when it found that an examination of the gravity of Mr. Pierce's offenses weighed in his favor.

Finally, I find that that the district court did not err when it found Mr. Pierce exceptional because of the unusual circumstances of Mr. Pierce's case. The process of resentencing him pursuant to *Esteen* has provided him with a unique opportunity -- Mr. Pierce has been able to prove that both he and his circumstances have changed. The district court's clear contemplation of Mr. Pierce's nature and

background, as well as the nature of the crimes he has committed, before rendering its sentencing decision was thorough and unsentimental. I would affirm the district court's determination that a sentence of sixty-six years – a constructive life sentence in this case – is constitutionally excessive in this case. *See Johnson* at 676-77.

In Mr. Pierce's case, the district court found that the state constitution prohibited the mandatory minimum sentence indicated by the Habitual Offender Law. The court's next task was then to establish the maximum sentence that would not be constitutionally excessive. "A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *Dorthey*, *supra*. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Arceneaux*, 18-642 (La. App. 5 Cir. 4/24/19), 271 So.3d 362, 366.

La. R.S. 15:1199.2[4] states that the mission of incarceration in our criminal justice system is to enhance public safety. The top goals and priorities of

_____

[4] La. R.S. 15:1199.2 provides (in pertinent part):
A. The mission of incarceration in the criminal justice system is to enhance public safety through the safe and secure incarceration of offenders, effective probation and parole supervision, and proven rehabilitative strategies that successfully reintegrate offenders into society, as well as assisting individuals and communities victimized by crime. The goals and priorities of incarceration in the criminal justice system involve a commitment to public safety and rehabilitation and are:
(1) To protect the citizens of the state of Louisiana.
(2) To punish conduct which is defined as criminal by the legislature.
(3) To deter future conduct which is defined as criminal by the legislature.
(4) To rehabilitate offenders so that they may be reintroduced into society as law-abiding citizens.
(5) To provide safety to both corrections staff and offenders.
(6) To provide basic services.
(7) To provide opportunities for change.
(8) To provide opportunities for restitution.
(9) To provide effective strategies for reentry into society following incarceration.
[ . . . ]
D. The legislature recognizes that an essential component of reducing recidivism is providing an individual with the necessary occupational skills to afford him the opportunity to earn a living, support his family, and contribute to his community.
E. The legislature also recognizes that in addition to occupational skills development, it is absolutely essential to provide proper substance abuse counseling, mentoring, and other

incarceration involve a commitment to public safety and rehabilitation; to protect the state's citizens, to punish and deter criminal conduct as defined by the legislature and "*to rehabilitate offenders so that they may be reintroduced into society as law-abiding citizens*." *Id.* (Emphasis added).

Mr. Pierce has made great strides while incarcerated. He has become sober, received counseling, learned a trade, and several other valuable life skills. He has a plan that involves starting a new life in a different geographical location from the area where he grew up in extreme dysfunction and committed armed robberies as a drug-addicted juvenile and young adult. He has family members who are willing to provide him with housing and employment. It is clear that additional time in prison would make "no measurable contribution to acceptable goals of punishment" and would be the purposeful imposition of pain and suffering. "The inquiry of whether a sentence is grossly disproportionate, however, focuses on whether 'a person *deserves* such punishment, not simply on whether punishment would serve a utilitarian goal.'" *State v. Johnson*, 16-259 (La. App. 4 Cir. 12/21/16), 207 So.3d 1101, 1105, *writ denied,* 17-119 (La. 2/2/18), 233 So.3d 616 *quoting*

---

programs to assist individuals as they return to their communities with a focus on breaking the cycle that prevents them from moving forward with their lives.
[ . . . ]
G. Successful offender reentry and reintegration into the community is a matter of critical importance to the public's safety, but reentry is often unsuccessful due to the barriers ex-offenders face upon release. Those barriers include, but are not limited to, a lack of education and job skills, employment prohibition in selected occupations, mental health and substance abuse problems, access to valid identification documents, child support enforcement regulations, access to public housing and other public benefits, and strained or fragile family and community ties.
H. The ability of ex-offenders to obtain employment after incarceration and become productive members of their communities is essential to reducing recidivism rates; however, successfully finding employment is often difficult due to the reluctance of many employers to hire individuals with criminal backgrounds.
I. Without successful reentry into the community, recidivism is likely to occur, causing detrimental effects to public safety, communities, families, taxpayers, and ex-offenders.
J. Offender reentry is a crime prevention strategy, which serves to reduce crime and the number of crime victims and ultimately ensures opportunities for safer communities. Successful reentry is also a cost savings measure which results in savings to state and local criminal justice systems.
K. The Department of Public Safety and Corrections has taken steps to implement offender reentry initiatives and is reaching out to other agencies and communities to form partnerships which are necessary to ensure continued support and success.

*Rummel v. Estelle*, 445 U.S. 263, 288, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)

(POWELL, J., dissenting) (emphasis in original).

> After "a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the Habitual Offender Law, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances. Instead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution."

*State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 677.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Casimer*, 12-678 (La. App. 5 Cir. 3/13/13); 113 So.3d 1129, 1138. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Id.*

"Compliance with sentencing guidelines pursuant to LSA–C.Cr.P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law." *State v. Otero*, 09-468 (La. App. 5 Cir. 1/26/10), 31 So.3d 1125, 1132, *writ denied,* 10-0489 (La. 9/24/10), 45 So.3d 1072. However, the factors outlined in that article provided a useful framework for us to follow the district court's reasoning. The court determined that Mr. Pierce proved by clear and convincing evidence that the sentence he was ultimately given for the armed robbery conviction, admittedly a crime of violence, was not one he deserved, or one specifically tailored with regards to his culpability. *See Id.* Once the district

court determined that the mandatory minimum was constitutionally excessive, it was appropriate to weigh the aggravating and mitigating circumstance outlined in Art. 894.1 to particularize the sentence to the defendant. *See State v. Smith*, 433 So.2d 688, 698 (La. 1983) ("The record must reflect that [the judge] adequately considered these guidelines in particularizing the sentence to the defendant.").

*Pearson*, *supra*, charges this Court, with the task of considering the sentences of similarly situated defendants. I note that, in *State v. Abbott,* 94-1046 (La. App. 4 Cir. 02/23/95), 650 So.2d 1223, the Fourth Circuit affirmed a district court order sentencing a second felony offender convicted of *three counts of armed robbery* to 17.5 years where the statutory minimum was 33 years. After considering the facts of the case, the youth of the defendant, and his prior convictions, the appellate court found that the lower court the district court satisfied the requirements of *Dorthey* and the downward departure was justified despite the fact that the defendant in *Abbott* used a gun to rob three people.

In another case, the Third Circuit found in *State v. Cole*, 12-1404 (La. App. 3 Cir. 4/24/13), 156 So.3d 75, that the district court's downward departure from habitual offender sentence for armed robbery as fourth felony offender was not clear error. The court found that the record and the jurisprudence supports the sentencing judge's conclusion that there were several factors which clearly and convincingly established Defendant was exceptional. Thus, due to the particular circumstances of his case, the legislature failed to fashion a meaningful sentence to match the culpability of the offender and the gravity of the offenses. However, the court vacated the sentence and remanded the matter so the district court could articulate specific reasons why it found that the mandatory minimum habitual offender sentence was not appropriate in that case. The defendant in *Cole,* who had robbed a motel guest while wielding a paring knife, was fifty years old at the time of sentencing. His predicate convictions were for petty theft. Cole was

sentenced to ten years at hard labor before the state filed a habitual offender bill of information. A mitigation specialist testified that the defendant had not hidden his identify, used a "minimal weapon", and had been gainfully employed in a leadership position, and his former employers thought highly of him. The *Cole* court noted that his "particular life imprisonment [would impose] an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life [and, as] defendant ages, these costs will only increase due to the need for geriatric health treatments." *Id.* at 82. The appellate court suggested "a severe sentence in this case, for example, a sentence of not less than 20 years, in conformity with La. R.S. 15:529(A)(1)(c)(i), but not more 30 years at hard labor, would meet all of the societal goals of incarceration and be constitutional in this case." *Id.*

I find Mr. Pierce's situation to be similar to those of the defendants in *Abbott* and *Cole*, *supra*. He has held himself accountable for his crimes, and he has endeavored to better himself by defeating his addiction and learning a trade. He has family and community support. I cannot say that the district court abused its discretion when it found that the State's continued incarceration of Mr. Pierce would serve no satisfactory purpose. Mr. Pierce's advanced age, low TIGER risk score, certificates of completion entered into evidence, and the testimony at the hearing supports the district court's findings that Mr. Pierce has been sufficiently punished and rehabilitated, has gained the tools he needs to successfully reintegrate into society, and, therefore, he has taken advantage of all the state penal system has to offer. *See* La. R.S. 1199.2.[5]

"[T]he trial court is best situated to determine a fair and appropriate sentence for the criminal conduct, which determination should be upheld unless the record

---

[5] See note 1, *supra*.

shows that broad sentencing discretion is abused." *State v. Aguliar-Benitez*, 21-174 (La. 10/10/21), 332 So.3d 618, 620. The supreme court in *Aguliar-Benitez* agreed with the dissent in part and reversed the ruling of our majority opinion to the extent that it vacated the 75-year sentence imposed by the trial court for sexual battery (of a child under the age of 13) following remand from [Aguliar-Benitez's first appeal] on the grounds of unconstitutional excessiveness. The dissent in part opined that the majority's ruling in that case was "an unwarranted overstep into the trial judge's courtroom, made more abrasive by not so subtle inferences that surely, the trial judge is incapable of reaching a just and legal result through his or her own effort, observation, and reasoning." *State v. Aguliar-Benitez*, 20-32 (La. App. 5 Cir. 12/30/20), 308 So.3d 1259, 1275, *writ granted,* 21-174 (La. 5/25/21), and *rev'd,* 21-174 (La. 10/10/21); 332 So.3d 618. The *Aguliar-Benitez* concurrence in part also noted that "this Court's role is not to decide whether a more lenient punishment for a defendant's crime might have been more appropriate, but only to determine whether the district court abused its vast sentencing discretion to the point where it shocks one's conscience to allow such a sentence to stand." *Id.* The opposite must also be true – it is not our role to decide whether a more stringent punishment for a defendant's crime may be more appropriate, if the sentence is one calculated by using sentencing guidelines provided by the jurisprudence and otherwise legal.

Further, the majority argues that the first trial judge's sentencing discretion should be given more weight in considering Mr. Pierce's resentencing. I disagree. The majority and the State admit that the life sentence ordered by the first trial judge is no longer appropriate. Mr. Pierce has successfully argued that he was entitled to a review of his sentence under *Dorthey*. An appellate court's deference to the first sentencing judge, in this instance, would render the *Dorthey* review meaningless. Additionally, in 2002, before the law at the time

offered no other option but to sentence Mr. Pierce to life imprisonment once Mr. Pierce was adjudicated a third-felony offender, the district court sentenced Mr. Pierce to fifty years imprisonment without benefits.  But, twenty years ago, less information was available, or widely known, regarding the culpability of youth offenders based on the maturation of the human brain occurring at age 25.  Lila Kazemian, Ph. D., *Pathways of Desistance From Crime Among Juveniles and Adults: Applications to Criminal Justice Policy and Practice*, National Institute of Justice Website (November 2021), https://www.ojp.gov/pdffiles1/nij/301503.pdf.  An exploration of the benefits and effects of mass incarceration versus its costs has also taken place in recent years. *See Louisiana Justice Reinvestment Task Force Report and Recommendations,* Louisiana Supreme Court website, www.doc.la.gov/justice-reinvestment-task-force (last visited October 27, 2022). Most importantly, the original trial judge could not foresee Mr. Pierce's commitment to rehabilitation. In 2001 and 2002, it made sense to err on the side of caution when evaluating of Mr. Pierce's risk of recidivism and the threat he posed to public safety.  No one would have been able to predict that Mr. Pierce would reach a point where his continued incarceration made no "measurable contribution to acceptable goals of punishment," would amount to nothing more than "the purposeful imposition of pain and suffering," and be "grossly out of proportion to the severity of the crime."  The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.  *State v. Rodas*, 15-792 (La. App. 5 Cir. 9/22/16), 202 So.3d 518, 527, *writ denied*, 16-1881 (La. 9/6/17); 224 So.3d 980. The district court's finding that twenty-two years is the longest possible sentence that is not excessive in Mr. Pierce's case is supported by the record and should not be disturbed.

Last, the fact that further injury to Mr. Pierce may be avoided or lessened by a successful parole campaign does not change the fact that a sentence of sixty-six years would be grossly disproportionate to his crimes and would serve no "measurable contribution to acceptable goals of punishment." *Dorthey*, *supra*. Further, based on the district court's findings, I find that it would also be cruel and unusual punishment to place Mr. Pierce under the supervision of the Department of Corrections. Considering his low Tiger-risk score, parole would unnecessarily place financial burdens and other restrictions on Mr. Pierce that would make caring for himself and contributing to his family's welfare and the community difficult[6] in the future.

A judge must tailor each sentence to the nature and culpability of each defendant, and to the nature of the crime while applying statutory guidelines. The legislature passed 2017 La. Acts 282 and mandated that judges consider whether mandatory minimum sentences under La. R.S. 15:529.1 would be constitutionally excessive pursuant to *Dorthey*. I do not opine that setting forth jurisprudence that a trial judge has wide discretion when sentencing defendants, except in instances where the defendants may benefit, was the intention of the legislature. The instant case is the ***extremely rare*** instance where the district court found that the range of sentences found constitutional in most cases for the crime of armed robbery committed by a habitual offender were excessive, and therefore, a violation of Mr. Pierce's constitutional rights. Because Mr. Pierce proved himself exceptional – a considerable feat considering the instant offense and one of the predicate offenses were armed robberies, crimes of violence – I do not find it appropriate to disturb the trial court's rulings and instead defer to the statutory mandatory minimums, or even the original sentencing judge, in this case.

---

[6] *See* note 1, *supra*.

Considering the foregoing, I would affirm the district court's August 1, 2022 judgment and find that the court did not commit legal error in finding Mr. Pierce's sentence constitutionally excessive or abuse its discretion in sentencing Mr. Pierce to twenty-two years for his conviction.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 31, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-KA-399**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD L. FORET (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLANT)       THOMAS J. BUTLER (APPELLANT)            ASHWINI VELCHAMY (APPELLEE)
SHANITA FARRIS (APPELLEE)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053